I'm David Wooldridge, appearing for Mr. and Mrs. Belk, the appellants in this matter. In 2004, Mr. and Mrs. Belk donated a conservation easement to a qualified organization, and they took a deduction pursuant to Section 170A and 170H of the Internal Revenue Code. 170H is the section that discusses conservation easement deductions and is the focus of this appeal. In order to be deductible under Section 170H, the donated conservation easement has to be a qualified real property interest, and a qualified real property interest is defined in Section 170H2C as follows. The following interest in real property, and it lists two that aren't pertinent, and then the third, a restriction granted in perpetuity on the use which may be made of the real property. It uses the word the there. It also uses the word the in front of use, but the becomes a very important word. This case and the interpretation here basically raises two questions, both of interpretation. Does the statute, Section 170, prohibit all or certain substitutions of the land that is subject to the easement? Does the statute prohibit that? Why didn't you just give it to them unconditionally? Unconditionally? A taxpayer could do that, Your Honor. Then you wouldn't have a problem getting there. It would be a donation of a total interest. What Congress obviously recognizes is that a lot of landowners are willing to give up the uses of the property that benefit the environment and open space and whatnot if they could keep it. This one was a property with the golf course in it and other natural areas in it. But was the property that was gifted adjacent to the golf course or within the golf course confines of the golf course? It included the golf course, Your Honor. Was the golf course part of it? Yes, sir. OK. The tees and greens and the fairways were not excluded? That's correct. All right. The statute requires that there be significant relatively natural habitat, for instance. It doesn't require that the entire acreage be relatively natural habitat. The Sixth Circuit, I didn't quote it in my brief, but there's a lot of the effect that the amount of the relatively natural habitat is not really the issue. It's the significance. But I will note that although the commissioner enjoys talking a lot about the golf course, this, that, and the other, this case is not here because the property was a golf course. And there's nothing in the statute. I thought maybe that was what was adjacent, like the off and the rough of some wetlands or areas that let grow up and wouldn't let the players go in. And that's usually the case, Your Honor. I mean, in this case, there's a creek and there's some sort of mussel that lives in the creek. And in my Kiva Dunes case, it was a bird flyaway where birds fly literally from North America to South America. And it was basically a bird R&R area. And they passed through. And they actually enjoyed the golf course. I put up a sign that said environmental area. Don't go in. They frequently do. And I believe they probably did here, too, Your Honor. But I thought the fairway was actually part of it here. Well, yes. But the parts that are particularly ecologically sensitive are typically posted with signage to protect them. At any rate, the first question that comes to be determined is whether the statute actually prohibits a substitution, any substitution or just certain substitutions. Does it prohibit that? There's very little evidence to suggest that it does. And I'll come back to that. The second question is if the statute prohibits substitution, then does the conservation easement agreement allow an offending substitution? Because the way perpetuity works is it doesn't matter if the substitution is ever made or denied, if it's not precluded by the document, then the easement is not considered to be perpetual. You can look at the regulation concerning mortgage subordination. If a mortgage is not subordinated, it's not deemed to be perpetual even though the mortgagee may never foreclose and it may never become an issue. The fact that it could is what offends the perpetuity. So the deed actually would have to literally preclude expressly substitution in order to avoid a problem as we read the statute. The first question of statutory interpretation, of course, relates to the language of the That's it. Does not turn on state law. I hope I've never suggested it did. The second question, which is does the easement permit an offending substitution if substitutions do offend, is a question of the language of the easement and the intent of the parties. And those are two separate interpretations, two separate languages, two separate intents. And they've been confused in briefs and in opinions, but I want to address them separately. On the first question of statutory interpretation, the fundamental argument of the commissioner is that there's the word the in front of real property in H2C. Now, it's odd that it makes a big deal of that word because in its regulation, in the commissioner's regulation that interprets this term, it omits the word the. The is not there. It just disappears. There's no explanation of why. You would think that if it had all this importance that they would have at least copied the term in from the statute. There's no express prohibition against substitutions or amendments to substitute in the statute. So everything is being gleaned primarily from this three-letter word. Well, what about the fact that the regulations clearly contemplate that substitutions will only be made in unusual circumstances, particularly regulation 1.170A14G, which talks about unexpected changes providing for judicial extinguishment of the easement. And also the other regulation that talks about the methodology for appraisal that must be conducted on the easement. The whole regulatory scheme does seem to contemplate that there will be only one piece of property unless there's an extreme situation, and then it has to be done in court to extinguish the easement. So how do you respond to that? It's not just the. I agree, Your Honor. It's a much larger body of regulatory issues, I think, that you have to address. The question of the value, the qualified appraisal question, is simply this. When you make a deduction, you value the property at the time of the deduction. It focuses on what is given at that time. There's not really any problem. At any given time, there is a subservient tenement to the easement. At the time of the donation, everybody knows what that property is. There's not been any amendment. And therefore, the valuation is done of the property that's there. And nobody's had any problems with that in the 30 years or so that this has been out there. The qualified. But what I'm worried about is it seems to me that you have to be arguing that the parties by contract can bypass the regulation. Yes, ma'am. I do. I do. And what permits this contractual bypass? Are you saying just the fact that it's not prohibited? It is not prohibited in the statute, and the extinguishment reg is not authorized in the statute. The extinguishment reg would appear to be a violation of this same perpetuity requirement that the commissioner claims. Interestingly enough, the extinguishment regulation only cures the perpetuity of use. The commissioner insists that there are two perpetuities, and each one has independent significance. If that's the case, then his regulation does not allow an extinguishment to satisfy the perpetuity in H2C, the perpetuity that's required in a qualified real property interest. Because what G6 does is it treats as if it protects a conservation purpose if certain things happen. It doesn't treat it as if it were the continuation of the property. It only addresses the H6, H5, excuse me, perpetuity purpose. Now, the other part of that is this. An extinguishment is quite different than an amendment or a substitution. An extinguishment means that the easement has gone away and that the land trust may very well not get anything. You'll note that the regulations dealing with the proceeds say if, you know, any proceeds. It doesn't suggest that there will be. And in an extinguishment, it's just as likely to assume that the land trust is tired of keeping up with this property because it no longer serves any conservation purpose. In a substitution, Your Honor, there would be a continuation of an easement, and it would relate to the substitute property, which would have necessarily at least equivalent ecological value and fair market value and be as favorable as the previous property. And in the Belk case in particular, the land trust would certainly have to be happy that all of those things occurred. They're all in the easement as part of the process by which the land trust considers whether an amendment is appropriate. Was the substitute property defined with specificity? In this case, Your Honor, it is defined in terms of contiguous property owned by this donor. It's not terribly specific except that the other property is recorded in the same probate offices as the easement, so it's certainly knowable. The concern here, let me extrapolate. There's a concern that the commissioner tries to propagate that there is some sort of hanky-panky that taxpayers are going to be allowed to game the system if a substitution of property is allowed. And that's simply... I'm out of town, Your Honor. My light has turned red. That means you're supposed to stop talking. That's what I thought. You have some rebuttal. Thank you. May it please the Court. Patrick Gerda for the Commissioner of Internal Revenue. Your Honors, taxpayers are trying to have their cake and eat it too. That's what this case comes down to. They claim the $10.5 million deduction for conservation easement that protects the open air values of their golf course, but they reserve the right to swap out the property under the easement. So when it becomes economically advantageous to develop the golf course property, if they choose to do so, they've given themselves the right to do it. And they have contiguous property that would be able to be swapped out? My understanding is that they have approximately 450 acres, and the easement covers about 180 acres. I could have those numbers wrong. No, I think that's about right. Yeah, 410, and the easement was, I'm going to go with 180. So it covered the golf course. So I think that Mr. Wooldridge is right to start with what it means to, what the statutory language means. Can I ask you, I'm sorry to interrupt you. Sure. Remember Judge King's question at the very beginning of the oral argument. If the taxpayer had decided to just give all the property to the conservation trust, he would get a tax deduction. That's right. Assuming that it passes the muster of showing a conservation purpose. Because remember, there are several different requirements. And is there a contention here? It doesn't. That was actually a contention in the passport that if this case gets remanded, it will come up again. That means the property wasn't reached. That's exactly right. If they could satisfy that, there wouldn't be any problem. That's right. There was no argument about valuation? There was an argument about valuation. The argument about valuation was, quite frankly, $10.5 million was too high a value. You all said it was too high. The commissioner said it was too high. Yeah, we thought that was too high for a conservation movement on a golf course. How far were you all willing to go? I think that we were willing to go about $200,000 or $1 million, somewhere in that range. But our valuation expert did get excluded because there were dual signatures, or there was a lack of dual signatures of the two people who were appraised. Was it an 18-hole golf course? That's my understanding. One of the reasons to swap it out is that we're going to expand the golf course? I don't think so. They have the development around the golf course. Exactly. They have development around the golf course. Sell golf clubs and build homes around it. Exactly. And then maybe sell out lots within the golf course. That's exactly it. Move the golf course somewhere else. That's exactly the game. And that's exactly what the conservation— Or the plan. Or the plan. Or the possible plan. Possible plan, right. Were they going to improve the golf course? Well, and that's actually provided— Sure. And, Judge King, that's actually provided for in the easement. They did reserve to themselves some rights to improve the golf course, to change the tee layouts, to change the fairways. So that goes really to the conservation purpose, whether a conservation purpose was protected. But just to get back to the question here of whether they satisfied H2C, that requirement that a restriction granted in perpetuity on the use which may be made of the real property, they didn't. And it's not just the plain language, which says that there has to be a restriction on the property in perpetuity. It's also a vast ream of legislative history, as well as the regulatory scheme that you brought up, Judge Keenan. And the legislative history makes pellucid what Congress was talking about. They were talking about the preservation of unique or otherwise significant land areas or structures. The contribution, and I'm quoting from the Senate report quoted in our brief, 1980 U.S. Scan at 6748, contribution must involve legally enforceable restrictions on the interest in the property retained by the donor that would prevent uses of the retained interest inconsistent with the conservation purpose. So that legislative history really shows that Congress was thinking, okay, the person who gives this is going to be giving it, and we're going to restrict that. And we know that it's in perpetuity because Congress went on in the Senate report to say the easement is non-transferable except to other qualified organizations that will also hold the perpetual restriction or property exclusively for conservation purposes. That's at 6749. We have a lot of restrictions on when we can consider legislative history. Sure. And, Judge King, what I wanted to emphasize. I mean, the Supreme Court has criticized us for that kind of stuff. Some of them. I understand, Judge King, but I was actually using the legislative history not to establish the point but to support the interpretation compelled by the plain language. When the plain language says it's a perpetual restriction on the property, that's what they were talking about. It's pretty clear from the plain language that when you have a perpetual restriction on the use of the property, there's a property that they're talking about, and the entire regulatory scheme, in addition to the legislative history, is built around that. And, quite frankly, that's what an easement is. It's an interest in land. That's Hornbook law. And it's also the law in North Carolina. North Carolina General Law 121-38b describes an easement as an interest in land. So what's important from all of this, the regulatory scheme, the legislative history, and the Hornbook law is that a conservation easement starts off as an easement. It's an interest in land. It's a restriction on the use of land. And what the plain language compels is that it must be perpetual. We don't have a perpetual easement here because they can remove parts. They can contractually extinguish parts of the easement and then put the easement on other places. I guess that their essential argument is that it is perpetual because they are always keeping the easement provisions. They're just being able to navigate it from one plot to another. Well, I think that is their argument. But again, I think that argument conflicts with the plain language. If it was just a restriction on use, you wouldn't need any sort of H2C, which describes the real property. You wouldn't need anything more than just the intent, the conservation purpose to give something away. And quite frankly, Congress asked for more than just having a conservation purpose here. They asked for something to be specifically given away, a property right. And a right that has to do with a partial interest in the real property. And I think that might be a good way to think about it, Judge Motz. Generally, in Section 170, you can't give away a partial interest in property and take a deduction. So that's our baseline. This is an exception to that baseline, which says under certain circumstances, you can give away a partial interest in property. So in the first two, they're talking about remainder interest, but they're always talking about partial interest in property. So when they're talking about a partial interest in property, they're talking about specific property. You can't give a partial interest in amorphous property that doesn't exist yet. I can't say I'm going to give an easement and then not have any property to attach it to. And that's exactly what their theory is. Actually, well, maybe that's where their theory goes. But I think their theory is actually that they are telling you what, they have all this property. And they are now giving you an easement with respect to this part of this property. And they have other parts of this property that they might switch the easement to. But they have defined it to such an extent that it's theirs, if you will. Well, and I think that if perhaps they had given an easement over all of the property, all of the 400 acres, that would be something. But they didn't do that. They specified the easement is over this amount. So they're saying the conservation purposes here relate to this amount, this golf course. And this is what we are protecting. Once you give that, I think the legislative history and the regulatory scheme make pretty clear, Congress doesn't want somebody to be able to give that and then get it back. So what the tax court correctly said was... Who's running the golf course? Beg your pardon? Who's running the golf course? I believe that the belts have an LLC called Old Sycamore LLC that runs the golf course. But my understanding is... So they really kept the golf course. Exactly. So they're running the golf course. The trust is not running the golf course. Well, I mean, I'm sure that as a legal matter, the trust is running the golf course and they're running the trust. I mean, in terms of the LLC. I'm sorry, I didn't understand. You were talking about the Smoky Mountain National Trust. No, I'm talking about it. The easement doesn't keep them from running the golf course. I think that that's right, yes. In fact, that's what the easement specifically allows. All ordinary and necessary activities for running the golf course are under the easement. And that goes to the argument that the tax court didn't reach. Is that right? That's right. That goes to the conservation purposes argument. Now, Mr. Berger, you can talk about the savings clause. I can if you'd like to. Were you planning to? Yeah. Well, I was going to keep talking about this and the regulations for a second, but we can turn to the savings clause. Okay. Well, no, if you want to go on... No, no. Savings clause time. Sounds wonderful. Okay. Why doesn't the savings clause kick in here? I'm concerned about the rationale that the court provided, talking about specific over general. I mean, essentially the court's rationale, I mean, the whole purpose of the savings clause is to knock out any provision that would render the agreement ineffective. And the savings clause is actually quite specific when it says that should the donation fail for any purpose as a qualified conservation contribution under Section 170H, then the substitution is not effective. So savings clause is quite specific, and it seems to me that the court's analysis doesn't deal with that. It just kind of dismisses it as a general provision. Well, I think that it's, first of all, important to remember that just as a general matter, the way that these conservation easements are evaluated is by looking at the rights reserved by the donor and the donation of a perpetual conservation easement, and they must conform to the requirements of the regulations and the statute. So basically we're taking a snapshot. We're taking a snapshot of what the easement says at the time, and that's Treasury Regulation 1.170A-14B2. The problem with the savings clause is basically it would flip the burden. So a savings clause would force the commissioner to go through any time that there's a problem with the easement, and there might be multiple problems, as we suggest that there are in this case, identify those, and at the end of the day, and this is all after the easement has been given, at the end of the day they say, oh, but we have a savings clause, so those provisions don't count. Really what we suggest is reading in North Carolina law the contract, the easement, together, the specific intent established by the very explicit right of substitution, which, as you know, is very specific too. Right, but the specific intent of this contract is to get a deduction by way of a conservation easement. Sure. And so why doesn't the savings clause very clearly accord with that intent of the contract to obtain an easement under the IRS code as permitted by law? Because Congress is actually required more than just having the intent to obtain a conservation easement. You may not be able to establish it. If this case were to be remanded, if for some reason the savings clause does save the day for them, then they're still going to have to establish their valuation, they're going to have to establish all those other things. But why haven't they very clearly manifested the intent to obtain an easement for tax purposes under the section of the code for lawful purpose, if done lawfully? Again, I think... And if not done lawfully, then it goes away. Your point's well taken, Judge, but I do go back to the fact that no matter their intent, they have to fulfill the requirements. And just having a savings clause saying, we want to get this deduction, obviously they want to get the deduction. Everyone who has a conservation easement of this sort wants this deduction. But they still have to check off the boxes when they go back to the tax court. Well, and what we would say is... What is the loss to you? I don't understand how the government has a problem with them being forced, so to speak, to keep the property that they initially gave and then to defend its fair market valuation and to defend everything else that it has to do in order to ultimately qualify for the easement. Well, the problem to the government's thinking is they didn't check off that first and primary box, H2C. By including the right to substitution, they haven't established that requirement. And they can't establish that requirement unless their general intent to have a conservation easement trumps the specific intent established in the contract. Well, it all depends on what you define as the specific intent. I think that that's right. I think that, quite frankly, the savings clause is for anything in the contract that might be problematic, that might be problematic for the easement. We don't mean it. We don't mean it. And I think that the specific provisions that are problematic are actually more specific than that and actually show a pretty clear intent that they want the... As the tax court held, that they want the opportunity to develop this property if it's economically advantageous for them. Well, they wouldn't be given the opportunity if the savings clause kicked in. They'd be stuck with their original grant, and they would have to then prove the issues that are still outstanding in the tax court. So they're not getting anything. I mean, they would certainly be getting the deduction, but they aren't gaming the system in the sense that they're trying to swap out property that's now more desirable for development. Well, actually, I'm going to push back on that a little, Judge. They're not gaming the system as long as the commissioner catches them. But if you have a savings clause, and if every conservation easement has a savings clause, obviously some are going to slip through the net. The commissioner can't say, we're going to look at every conservation easement, and if you get a savings clause, you're okay until we find something else. You don't even have to establish the requirements because we'll go back to the tax court or do that type of analysis. So no, I think that the savings clause could be very pernicious and lead to tax avoidance. Would you never be able to have a savings clause? Is that the commissioner's submission? I think that you couldn't have a savings clause of this sort that generally sets aside clear statutory requirements. You couldn't have a savings clause that trumps statutory requirements. That's right. So what kind of savings clause could you have? That's an excellent question. I think that the savings clause would have to be more on the edges. So, for example, in their brief, they discuss the conservation purpose cases of Kauffman and Simmons, where there was a real question of a facade easement case, so very different from ours, fixing up the facade and having the consent to fix up the facade. Okay? I could see some of those easement deeds are very specific in what the conservation holder can consent to or cannot. And I could see in some of those cases a very directed savings clause saying, if any of these tinkering around the edges that are consistent with conservation purposes generally violate the conservation purpose in the view of the IRS, we withdraw. We withdraw our authorization to do that. So I think it would have to be much more directed, and I don't think it can go to what I like to call the requirements at the heart of the statutory scheme. Right, but doesn't the savings clause really say we're not going to be able to amend our agreement to do anything that will violate or jeopardize the favorable tax treatment under the code? And what's wrong with saying that we're agreeing to restrict our right of amendment? I mean, really, conceptually, that's what they're doing, isn't it? Well, if that's all they wanted to do, they could have just not had the right of substitution. If they wanted to – I mean, this is, as Judge King said, a case where if they wanted to give money for conservation purposes, they could. If they wanted to give this land – Well, they wanted to max it out. Of course. I mean, they wanted to see if they could get it, but then they wanted to ensure that if they couldn't do it, that their right to amend the agreement wouldn't be threatened. In other words, if they were trying to do something that would run afoul of the code, that they wanted to protect themselves against their own miscalculation. Well, and I think that that's precisely the point. I don't think that you want to give an easy avenue to tax avoidance where everyone gets one chance at putting in whatever they want in the conservation easement and getting to stand back and say, well, hey, we didn't really mean it. We're just restricted to whatever we're allowed under the code. Actually, as an anti-matter, we want to establish what's allowed under the code and people should comply with what's in the code. And that's the real problem here. They didn't comply. And I don't think that there's much dispute that this was a perpetual conservation easement on a set area of land. Okay, so then other than your example you gave, Judge Motz, that you could have some facade changes like the Kauffman case, I guess, and the other case where they had that allowed, what kind of savings clause would be valid? Would any substitution of a property ever be valid? Would it ever be saved from invalidating an agreement under a savings clause? Would a savings clause ever operate outside the context of a change in facade? I see my time's up. Do you mind if I respond? No, you may answer the question. No, I don't think that a savings clause can save a substitution. And quite frankly, I think that the legislative history talks about a substitution. I don't think you can have a broad savings clause. And I would note, as you pointed out, Judge Keenan, the regulations give flexibility in cases of impossibility and impractability what to do to preserve the conservation purposes. So I'm not sure that a broad savings clause is necessary except to do exactly what you said, take a run at the IRS, see if they pick up on something. If they don't pick up on something, then you sail right through with your $10.5 million deduction. And I think that's what we don't want to encourage. Thank you very much. Mr. Wooldridge, do you have a rebuttal? May it please the court. The commissioner seems to think that the land trusts are there to collude with taxpayers to undermine the entire intent of the code. That will be great news to the land trust. Fifteen hundred land trusts, members of the land trust alliance, have a fair following in Congress and they're well respected there. So it's odd that the commissioner would be making that argument. Note that there will be no substitution in the Belk case or for that matter in any other case unless there's an agreement by the land trust. There has to be a mutual agreement. Over and over the commissioner has said that these taxpayers reserve the right to substitute and they did not. They did not. They have the right to request a substitution. They have a right to get the land trust to consider one. And in considering that, the land trust has to consider all of the things within its proper 501c3 responsibilities and obligations, the value, the ecology, the effect on anything else. It has to receive the documentation that would be necessary just like the baseline documentation in the original transaction. It has to pay the costs of the land trust. And then, most importantly, there is a specific reference in Part C of that provision that says, and no substitution will be effective unless or actually until there is an amendment to the conservation easement. So that the amendment provision and the savings clause are directly linked back to this substitution provision. Now, savings clauses are for the purpose of addressing real problems. Are you, is tax law your specialty? Yes, ma'am. So are you familiar with other cases that have such savings clauses? Most every will I've ever seen has a savings clause about interpreting it for marital deduction. Yeah, but that's not what I'm talking about. Okay. Yes, ma'am. Like when I file my, when I pay my taxes, I would be very surprised if my, the person who prepares them would suggest that I put a savings clause in. If any of these deductions are wrong, please don't charge me any interest because I really think they're all legitimate. I mean, you know, I don't know that the Internal Revenue Service would look too kindly on that. Right. I think there is a distinction between, for instance, if I mean to give $100,000 worth of property to Mr. Erta and we do a deed and then we get an appraisal and we say in our deed, if the appraisal comes in over $100,000, then Mr. Erta is going to deed back a proportion of the property. The tax court has ruled that that's a valid provision. It changes retroactively. Obviously, the amount that Mr. Erta got Are you suggesting that's a savings clause? I was searching. That came to mind as a savings clause. It's very different than what we have here. I'm not sure, Your Honor. Well, I'm not suggesting. Right. The problem, Your Honor, with Mr. Erta's position on this is that they've created the problem. They had the opportunity to adopt a regulation that in plain black letter language prohibits any substitution except this one that relates to the extinguishment. That's all they had to do. If they did that, the land trust We could do a lot of things that we each individually think are better. But the government does it. You know, they tend their house and we tend ours and you tend yours. They do, Your Honor. But because they don't always make explicit, then taxpayers are left to guess at what kind of position they're going to take and what that law may become. And because they're guessing, they have a desire to use a savings clause so that if there is some interpretation like substitution, and frankly this is not something that was anticipated, this is a case of first impression. You wonder why after all these years if it's this simple because all of these easements out there can be amended either under state law or expressly under the terms of the document. They could have solved the problem. But in order to deal with the uncertainty caused by the commissioner, the taxpayers here did and the land trust did put in a provision that saved, that essentially caused the easement as interpreted to be ineffective as to the substitution clause if a substitution clause is not appropriate under Section 178. And that was the clear intent of the savings clause. That's what savings clauses do. They're always general clauses that affect and override specific clauses. It's hard for me to conceive of a savings clause that wouldn't be. Let me address a couple of other things because there's a whole lot of undercurrent from Mr. Erta that this is some kind of a sham and a game of the system, which is where I left off before. The tax court, in the case I tried, had an easement that contained a golf course called Kiva Dunes Conservation LLC, 2009 Tax Court Memo Decision-146, in which the court approved a $30 million deduction on roughly the same amount of property. And after two days of trial on the biology of the conservation purpose, the commissioner conceded that issue. And this was a golf course property. If Belks is a golf course, then that was a golf course. There's a whole lot more to it that I could explain, but there's not time to do that. But the implication that that's somehow bad is just mistaken. Congress put an entire, well, I won't go there. The collusion aspect assumes that the land trusts don't do their job. Congress clearly invested a lot of confidence in the land trusts. You can see it in the Senate report. You can see it in the duties given to the land trust. The land trusts make the decision in the first instance to take the property and make the decision that it has sufficient conservation purpose. The commissioner's not running around saying, well, we'd have to audit to see if they were doing right. They might have to audit, but Congress was perfectly happy. Thank you very much. Thank you. We will come down and greet the lawyers and then take a short recess. This honorable court will take a brief recess.
judges: Diana Gribbon Motz, Robert B. King, Barbara Milano Keenan